IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| JULIA WELLS GREEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 119-035 |
| | ) | |
| ANDREW M. SAUL, Commissioner | ) | |
| of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

_____

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**
_____

Plaintiff appeals the decision of the Commissioner of Social Security denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act.   Upon consideration of the briefs submitted by both parties, the record evidence, and the relevant statutory and case law, the Court **REPORTS** and **RECOMMENDS** the Commissioner's final decision be **AFFIRMED**, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of the Commissioner.

**I.     BACKGROUND**

Plaintiff applied for DIB and protectively filed for SSI on September 7, 2016, alleging a disability onset date of January 1, 2015.  Tr. ("R."), pp. 10, 213-23.  Plaintiff was forty-four years old at her alleged disability onset date and was forty-seven years old at the time the Administrative Law Judge ("ALJ") issued the decision currently under consideration.  R. 18, 295.  Plaintiff alleged disability based on the following conditions:  congestive heart failure,

heart disease, hypertension, seizures, hypoglycemia, bi-polar disorder, depression, internal scarring, detached retina; ventricular tachycardia, and migraines.  R. 247, 300.  Plaintiff completed three years of college and accrued work history as a police dispatcher, communications officer for law enforcement, court assistant, and quality assurance for a telecommunications company.  R. 17, 248, 301-02.

The Social Security Administration denied Plaintiff's applications initially and on reconsideration.  R. 82-83, 124-25; see also R. 56-81, 84-123.  Plaintiff requested a hearing before an ALJ, R. 146-48, and the ALJ held a hearing on July 25, 2018.  R. 27-55.  At the hearing, the ALJ heard testimony from Plaintiff, who appeared with counsel, as well as from William E. Villa, a Vocational Expert ("VE").  Id.  On February 7, 2018, the ALJ issued an unfavorable decision.  R. 10-19.

Applying the sequential process required by 20 C.F.R. §§ 404.1520 and 416.920, the ALJ found:

1.  The claimant has engaged in substantial gainful activity since January 1, 2015, the alleged onset date (20 C.F.R. §§ 404.1571 *et seq.* and 416.971 *et seq.*).

2.  The claimant has the following severe impairments:  congestive heart failure, hypertension, seizure disorder, anxiety, migraines, ventricular tachycardia, status post gastric bypass surgery, status post heart valve replacement, and degenerative disc disease of the lumbar spine (20 C.F.R. §§ 404.1520(c) and 416.920(c)).

3.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

4.  The claimant has the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a) and is further limited to the following:  lifting, carrying, pushing and pulling 10 pounds occasionally and less than 10 pounds frequently; sitting six hours, standing/walking two hours; occasional stooping, crouching, kneeling; no

crawling and frequently balancing; no limits on hearing, seeing, or speaking; occasional climbing stairs and ramps, no climbing of ladder ropes or scaffolds; no restrictions on reaching bilaterally in all directions including overhead, no restrictions with fingering, feeling and handling.[1]   She must avoid concentrated exposure to dusts, fumes, odors, gases, smoke, irritating inhalants, and areas of poor ventilation; avoid concentrated exposure to vibrations, frequent use of hands and feet for the operation of controls; avoid concentrated exposure to extreme heat and cold.  She can work at heights and near bodies of water when protected from falls, and avoid working with or near dangerous and moving types of equipment or machinery, to include dangerous moving type of parts; no operation of motor vehicles of any type; avoid concentrated exposure to bright lighting but can work in areas with typical office type of overhead lights; avoid concentrated exposure to loud noises but can work in an environment with noise levels equal to keyboarding, telephone rings, copier, and printer sounds as well as conversation level talk, as examples.

She can perform simple, routine, and repetitive job tasks; can understand, remember, and carry out job instructions related to simple, routine, and repetitive job duties; can accept frequent supervision, frequently interact with co-workers and occasionally interact with the general public; works bests with objects and not with people.  While performing simple, routine, and repetitive tasks the claimant can maintain attention, concentration, and pace if allowed – "traditionally" scheduled work breaks of 15 minutes in the first half of the workday, 15 minutes break in the second half of the workday and a 30 minute midday break; can be punctual and work within a set schedule; requires no special supervision to complete work assignments pertaining to simple, routine, and repetitive job tasks; can make work related decisions regarding simple, routine, and repetitive job assignments; and can adapt to changes in job duties and work assignments if the changes are infrequent and gradually introduced.

5. Considering the claimant's age, education, work experience, and RFC, there are other jobs that exist in significant numbers in the national economy that

---

[1]"Sedentary work" is defined as:

lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. §§ 404.1567(a) & 416.967(a).

the claimant can perform, (20 C.F.R. §§ 404.1569, 404.1569(a), 416.969, and 416.969(a)).

R. 10-19.

When the Appeals Council ("AC") denied Plaintiff's request for review, R. 1-6, the Commissioner's decision became "final" for the purpose of judicial review.  42 U.S.C. § 405(g). Plaintiff then filed this civil action requesting reversal or remand of that adverse decision. Plaintiff argues that the Commissioner's decision is not supported by substantial evidence because the ALJ failed to properly consider (1) Listings 12.04 and 12.06; and (2) the consultative examiner's report and Plaintiff's treating physician's opinion.  See doc. no. 18 ("Pl.'s Br.").  The Commissioner maintains the decision to deny Plaintiff benefits is supported by substantial evidence and should therefore be affirmed.  See doc. no. 19. ("Comm'r's Br.").

## II.  STANDARD OF REVIEW

Judicial review of social security cases is narrow and limited to the following questions: (1) whether the Commissioner's findings are supported by substantial evidence, and (2) whether the Commissioner applied the correct legal standards.  Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997).  When considering whether the Commissioner's decision is supported by substantial evidence, the reviewing court may not decide the facts anew, reweigh the evidence, or substitute its judgment for the Commissioner's.  Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991).  Notwithstanding this measure of deference, the Court remains obligated to scrutinize the whole record to determine whether substantial evidence supports each essential administrative finding. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).

The Commissioner's factual findings should be affirmed if there is substantial evidence to support them. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991). Substantial evidence is "more than a scintilla, but less than a preponderance: '[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting Bloodsworth, 703 F.2d at 1239). If the Court finds substantial evidence exists to support the Commissioner's factual findings, it must uphold the Commissioner even if the evidence preponderates in favor of the claimant. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004). Finally, the Commissioner's findings of fact must be grounded in the entire record; a decision that focuses on one aspect of the evidence and disregards other contrary evidence is not based upon substantial evidence. McCruter v. Bowen, 791 F.2d 1544, 1548 (11th Cir. 1986).

The deference accorded the Commissioner's findings of fact does not extend to his conclusions of law, which enjoy no presumption of validity. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding that judicial review of the Commissioner's legal conclusions are not subject to the substantial evidence standard). If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the Court must reverse the decision. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

## III.   DISCUSSION

### A.   The ALJ Properly Concluded Plaintiff's Impairments Did Not Meet or Medically Equal Listing 12.04 or 12.06

Plaintiff first argues the ALJ failed to adequately consider Listing 12.04, which pertains to depressive, bipolar and related disorders, or Listing 12.06, which pertains to anxiety and

obsessive-compulsive disorders.  At step three of the evaluation process, the Commissioner must determine whether a claimant meets or equals a disability described in the Listing of Impairments, which describes impairments severe enough to prevent a person from performing any gainful activity.  Davis v. Shalala, 985 F.2d 528, 532 (11th Cir. 1993).  Plaintiff bears the burden of showing that her condition meets or equals a Listing.  Castle v. Colvin, 557 F. App'x 849, 852 (11th Cir. 2014) (*per curiam*); Wilkinson *ex rel*. Wilkinson v. Bowen, 847 F.2d 660, 662 (11th Cir. 1987).

In order to show her impairment meets a Listing, Plaintiff needs to satisfy all of the specified medical criteria; "[a]n impairment that manifests only some of those criteria, no matter how severely, does not qualify."  Sullivan v. Zebley, 493 U.S. 521, 530 (1990).  "To 'equal' a Listing, the medical findings must be 'at least equal in severity and duration to the listed findings.'"  Wilson v. Barnhart, 284 F.3d 1219, 1224 (11th Cir. 2002) (citation omitted).  It is axiomatic that when a claimant's condition meets or equals a Listing, the Commissioner must find the claimant disabled without regard to the claimant's age, education, or previous work experience.  20 C.F.R. § 404.1520(d).

The ALJ expressly found Plaintiff did not meet Listing 12.06 because the evidence did not support a finding Plaintiff met the requirements of either Paragraph B or C of Listing 12.06. While the ALJ never expressly mentioned Listing 12.04, the conclusion Plaintiff did not meet Listing 12.04 is implied because Listing 12.04 incorporates the same Paragraph B and C criteria the ALJ considered in connection with Listing 12.06.  See 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 12.04 (A); Hutchinson v. Bowen, 787 F.2d. 1461, 1463 (11th Cir. 1986) (holding there may be an implied finding the ALJ did not meet a Listing).  Substantial evidence supports the ALJ's finding that Plaintiff did not meet Paragraphs B and C of Listings 12.04 and 12.06.

Listings 12.04 and 12.06 require that a claimant satisfy either Paragraphs B or C, which provide as follows:

> B.   Extreme limitation of one, or marked limitation of two, of the following areas of mental functioning:
>
>> 1.   Understand, remember, or apply information.
>>
>> 2.   Interact with others.
>>
>> 3.   Concentrate, persist, or maintain pace.
>>
>> 4.   Adapt or manage oneself.
>
> OR
>
> C.   Your mental disorder in this listing category is "serious and persistent;" that is, you have a medically documented history of the existence of the disorder over a period of at least 2 years, and there is evidence of both:
>
>> 1.   Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder (see 12.00G2b); and
>>
>> 2. Marginal adjustment, that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life.

20 C.F.R. § Pt. 404, Subpt. P, App. 1, §§ 12.04 (B)-(C), 12.06 (B)-(C).

Ignoring Paragraph C, Plaintiff argues she satisfies B(3) and B(4) because she either has an extreme limitation in one or a marked limitation of both.  In evaluating Paragraph B, the ALJ found Plaintiff had only moderate, not marked or extreme, limitations in these two areas.  Upon review of the ALJ's entire decision and the record evidence, the Court finds the ALJ's findings are supported by substantial evidence.

At step three, the ALJ found only moderate Paragraph B limitations because of Plaintiff's May 2, 2017 Function Report, in which Plaintiff reported handling her personal hygiene,

preparing meals, performing household chores, shopping, managing funds, engaging in hobbies, and spending time with others.  R. 14, 364-71.  This report, the ALJ found, was directly at odds with Plaintiff's self-alleged difficulties in concentrating, completing tasks, memory, and getting along with others as stated in her December 11, 2016 "Function Report."  Id.; R. 310-17.  While Plaintiff generally claimed marked or severe limitations caused by anxiety and depression, the ALJ cited March 15, 2017 treatment records reporting Plaintiff's anxiety was "extremely improved" while on medication.  R. 1766; see Dawkins v. Bowen, 848 F.2d 1211, 1213 (11th Cir. 1988) ("A medical condition that can reasonably be remedied either by surgery, treatment, or medication is not disabling.").

The ALJ's consideration of the Paragraph B criteria continued at the step four RFC determination, which is appropriately considered by this Court because the ALJ, at the conclusion of his step three analysis, incorporated the RFC discussion as follows:  "The following residual functional capacity assessment reflects the degree of limitation I have found in the 'paragraph B' mental functional analysis."  R. 14.  The RFC section cites substantial evidence supporting the ALJ's conclusion of only moderate limitations.

Dr. Celine Payne-Gair, state agency consultant at the initial level, determined Plaintiff had only mild limitations as to all Paragraph B criteria.  R. 61-62.  While the ALJ disagreed and determined the limitations to be moderate rather than mild, Dr. Payne-Gair's determination nonetheless supports the ALJ's determination the limitations were not marked or severe.  R. 16.  Furthermore, Plaintiff cites to no additional evidence in the record, and the Court is unable to find any evidence, indicating more than moderate limitations.  Thus, the ALJ's finding of moderate limitations with respect to the Paragraph B(3) and (4) criteria is supported by substantial evidence.

Plaintiff argues the ALJ mischaracterized Plaintiff's May 2nd Function Report as showing Plaintiff could perform household chores, shop, engage in hobbies, and spend time with others.  R. 364-71.  Plaintiff then cites to her sister's statement Plaintiff performs few daily living activities and relies on her sister for cooking, cleaning, and shopping.  R. 412-20.  The May 2nd report does state Plaintiff had bad days where she could not get out of bed to perform daily activities, but the reason had nothing to do with mental problems affecting her ability to concentrate, persist, maintain pace, or manage oneself.  R. 364-71.  Instead, Plaintiff's bad days were caused by alleged migraines and back pain that are irrelevant to the analysis of the Paragraph B criteria.  Id.  Further, Plaintiff checked off the box that indicated she can perform personal care with no problem and reported she could perform chores, shop for food, prepare a meal for herself, and perform her hobbies "every day, with ease," all of which the ALJ noted.  Id. She also reported no problem managing her own finances.  Id.  Plaintiff also argues Dr. Reginald Brown, who performed a consultative evaluation of Plaintiff on June 26, 2017, found Plaintiff was unable to perform activities of daily living, but instead, Dr. Brown twice reported Plaintiff was able to perform activities of daily living.  R. 983, 988.

Plaintiff cites to two medical documents as evidence of "a developed medical record for bipolar disorder and depression."  Pl.'s Br., p. 2.  However, upon review of those two documents and the 1,840-page record, Plaintiff still fails to establish any Listing.  Plaintiff first cites to one page of the post-surgery treatment notes of Dr. John W. Odom, who performed an esophagogastroduodenoscopy with biopsy on Plaintiff November 10, 2017.  R. 1781.  Although Dr. Odom states Plaintiff "has severe renovascular hypertension, anxiety, depression, and has had multiple heart procedures," he is at most describing his interpretation of Plaintiff's current state after surgery rather than diagnosing and treating Plaintiff with a depressive disorder.  Id.

Further, Dr. Odom states Plaintiff was seeking treatment by a psychiatrist, not himself, for a recent manic breakdown.  Id.  However, Plaintiff does not point to, and the Court is unable to find, any psychiatrist's report or treatment records showing greater limitations than what the ALJ concluded.

Plaintiff next cites to one page of the treatment notes by Dr. Joseph L. Jackson on October 8 and November 9, 2015, which state, among many other observations, Plaintiff was depressed, angry, anxious, and emotionally upset due to her partner's infidelity.  R. 1820.  The page also notes Plaintiff is "followed for anxiety and depression."  R. 1820.  Dr. Jackson is merely describing his impression of Plaintiff and her allegations rather than diagnosing or treating a depressive disorder.  Dr. Jackson treated Plaintiff for hypertension and not mental health.  R. 1822.

For all of these reasons, the Court finds the ALJ relied on substantial evidence to find Plaintiff does not meet the Paragraph B criteria.  Plaintiff does not challenge the ALJ's finding that she does not meet the Paragraph C criteria.  Accordingly, substantial evidence supports the finding Plaintiff did not meet either Listing 12.04 or 12.06.

### B.     The RFC is Supported By Substantial Evidence

#### 1.     Step Four Framework for Formulating Plaintiff's RFC

At step four of the sequential process, the ALJ evaluates a claimant's RFC and ability to return to past relevant work.  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  RFC is defined in the regulations "as that which an individual is still able to do despite the limitations caused by his or her impairments."  Phillips v. Barnhart, 357 F.3d 1232, 1238 (11th Cir. 2004) (citation omitted).  Courts have described RFC as "a medical assessment of what the claimant can do in a work setting despite any mental, physical or environmental limitations

caused by the claimant's impairments and related symptoms." Watkins v. Comm'r of Soc. Sec., 457 F. App'x 868, 870 n.5 (11th Cir. 2012) (*per curiam*).  As explained above, there are three categories of limitations: exertional, non-exertional, and a combination of exertional and non-exertional limitations. Baker, 384 F. App'x at 894.

### 2.    Assigning Weight to Medical Opinions

In the Eleventh Circuit, a treating physician's opinion must be given substantial weight. Hillsman v. Bowen, 804 F.2d 1179, 1181 (11th Cir. 1986).  Refusal to give a treating physician's opinion substantial weight requires that the Commissioner show good cause. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1159 (11th Cir. 2004); Schnorr v. Bowen, 816 F.2d 578, 581 (11th Cir. 1987).  "The [Commissioner] must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error." MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986).

The Commissioner, however, is not obligated to agree with a medical opinion if the evidence tends toward a contrary conclusion. Sryock v. Heckler, 764 F.2d 834, 835 (11th Cir. 1985).  Indeed, a treating physician's opinion may be properly discounted if it is unsupported by objective medical evidence, is merely conclusory, or is inconsistent with the physician's medical records. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997); see also Phillips, 357 F.3d at 1241 (affirming ALJ's rejection of treating physician's opinion when such opinion conflicted with the doctor's treatment notes and claimant's testimony regarding daily activities).

When considering how much weight to give a medical opinion, the ALJ must consider a number of factors:

> (1) whether the doctor has examined the claimant; (2) the length, nature and extent of a treating doctor's relationship with the claimant; (3) the medical evidence and explanation supporting the doctor's opinion; (4) how consistent the doctor's "opinion is with the record as a whole"; and (5) the doctor's specialization.

Forsyth v. Comm'r of Soc. Sec., 503 F. App'x 892, 893 (11th Cir. 2013) (*per curiam*) (citing 20 C.F.R §§ 404.1527(c), 416.927(c)).

Additionally, the Commissioner's regulations require that the opinions of examining physicians be given more weight than non-examining physicians, the opinions of treating physicians be given more weight than non-treating physicians, and the opinions of specialists (on issues within their areas of expertise) be given more weight than non-specialists. See 20 C.F.R. §§ 404.1527(c)(1)-(2), (5), 416.927(c)(1)-(2), (5). Under SSR 96-5p, the determination of disability regarding a Social Security claim is reserved to the Commissioner, and treating and other medical source opinions on issues reserved to the Commissioner are never entitled to controlling weight or special significance. SSR 96-5p, 1996 WL 374183, at *1, 2 (July 2, 1996); see also 20 C.F.R. §§ 404.1527(d), 416.927(d).

### 2.    The ALJ Properly Discounted the Opinion of Treating Physician, Dr. Jayaberi, and Properly Characterized Dr. Brown's Report

Plaintiff argues the ALJ misread Dr. Brown's report in finding Plaintiff could perform sedentary work and failed to address further limitations within the report. Plaintiff also argues the ALJ failed to consider the opinion of Plaintiff's treating physician, Dr. Sean Jayaberi. The Court disagrees and finds the RFC to be supported by substantial evidence.

As to Dr. Brown's report, Plaintiff first argues the ALJ misread the report to mean Plaintiff could perform sedentary work. In limiting Plaintiff to sedentary work, the ALJ gave

significant weight to Dr. Brown's report because it was consistent with the record.  R. 14-17.

Plaintiff argues the ALJ misread the below excerpt from Dr. Brown's report:

> The claimant has multiple medical conditions that interfere with her daily living.  The most serious of them includes history of ventricular tachycardia.  The claimant is currently wearing a life vest constantly for this condition.  She has also had a history of heart valve replacement and has poorly managed CHF.  A combination of these conditions will limit the claimant significantly from any type of work other than sedentary activities.  The claimant also has evidence of a mechanical knee, shoulder and back strain as well, which will also further limit her from any significant work.

R. 984.  Plaintiff states this excerpt only means she cannot perform work above the sedentary level, not that she can perform work at the sedentary level.   Plaintiff's argument is unpersuasive.  The plain language of Dr. Brown's report shows he found her capable of performing sedentary work so long as accommodations were made for her knee, shoulder, and back problems.  The ALJ did just that by limiting Plaintiff to sedentary work, then imposing multiple restrictions on her performance of work at the sedentary level.

Plaintiff next argues Dr. Jayaberi's opinion Plaintiff "cannot work" should be given greater weight because it is consistent with Dr. Brown's report.  Dr. Jayaberi stated in total:

> Ms. Julia Green is currently a patient of Dr. Sean Jayaberi, cardiologist, at AU Health in Augusta, Georgia.  Due to her cardiac disease and prior cardiac surgery, Dr. Jayaberi is in agreement that Ms. Green cannot work and should therefore receive Social Security Disability Benefits.  Please call with any questions. Thank you.

R. 1393.  The ALJ correctly gave this opinion little weight because it is conclusory and limited to the ultimate issue specifically reserved to the commission, such that it is entitled no weight.  20 C.F.R. §§ 404.1527(d), 416.927(d); Lewis, 125 F.3d at 1440.  Additionally, Dr. Jayaberi's opinion is not consistent with Dr. Brown's report as discussed above.  Dr.

Brown clearly determined Plaintiff could perform sedentary work and is capable of performing activities of daily living.  R. 983-84, 988.

IV.    **CONCLUSION**

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** the Commissioner's final decision be **AFFIRMED**, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of the Commissioner.

SO REPORTED and RECOMMENDED this 19th day of May, 2020, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA